STATE OF CONNECTICUT *v.* JOHN TABONE
(SC 17561)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

528

Argued January 12—officially released August 15, 2006

*Andrew S. Liskov*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *Jonathon C. Benedict*, state's

attorney, and *Cara Eschuk*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, John Tabone, appeals[1] from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant claims that the total length of his sentence of ten years of imprisonment and ten years of special parole for the offense of sexual assault in the second degree in violation of General Statutes (Rev. to 1999) § 53a-71[2] is illegal because it: (1) exceeds the maximum sentence of imprisonment authorized by General Statutes §§ 53a-35a (6) and 53a-71 in violation of General Statutes § 54-128 (c);[3] and (2) violates the double jeopardy clause of

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes (Rev. to 1999) § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (4) such other person is less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare . . . .

"(b) Sexual assault in the second degree is a class C felony for which nine months of the sentence imposed may not be suspended or reduced by the court."

All subsequent references to § 53a-71 pertain to the 1999 revision.

[3] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (6) for a class C felony, a term not less than one year nor more than ten years . . . ."

General Statutes § 54-128 (c) provides: "Any person who, during the service of a period of special parole imposed in accordance with subdivision (9) of subsection (b) of section 53a-28, has been returned to any institution of the Department of Correction for violation of such person's parole, may be retained in a correctional institution for a period equal to the unexpired portion of the period of special parole. The total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted."

the fifth amendment of the United States constitution. We agree with the defendant's first claim and, accordingly, we reverse the trial court's judgment denying the defendant's motion to correct an illegal sentence.

The following procedural history is relevant to our resolution of the present appeal. On November 2, 2000, pursuant to a plea agreement,[4] the defendant pleaded guilty under the *Alford* doctrine[5] to sexual assault in the second degree in violation of § 53a-71 (a) (4), sexual assault in the third degree in violation of General Statutes (Rev. to 1999) § 53a-72a (a) (1) (A)[6] and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2). The trial court sentenced the defendant as follows: (1) for the charge of sexual assault in the second degree, ten years of imprisonment followed by ten years of special parole; (2) for the charge of sexual assault in the third degree, five years of imprisonment followed by five years of special parole; and (3) for the charge of risk of injury to a child, five years of imprisonment followed by five years of special parole. The trial court ordered all of the sentences to run concurrently, resulting in a total effective sentence of ten years of imprisonment followed by ten years of special parole.

In June, 2004, the defendant filed a motion to correct his sentence for sexual assault in the second degree

---

[4] The defendant was charged in a long form information alleging that he had engaged in sexual intercourse and indecent sexual conduct with a child under the age of thirteen "on a date or dates between approximately January 1, 1999 and approximately May 31, 1999 . . . ."

[5] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] General Statutes (Rev. to 1999) § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . .

"(b) Sexual assault in the third degree is a class D felony."

pursuant to Practice Book § 43-22.[7] Thereafter, the trial court held a hearing on the defendant's motion. At the hearing, the defendant pointed out that § 53a-35a (6) limits the maximum sentence of imprisonment for sexual assault in the second degree to ten years. See General Statutes (Rev. to 1999) § 53a-71 (b). Because the defendant was sentenced to ten years of imprisonment *and* ten years of special parole, the defendant maintained that his sentence exceeds the maximum statutory limit and, therefore, is illegal. Moreover, the defendant claimed that § 54-128 (c) explicitly prohibited the imposition of such an illegal sentence. See General Statutes § 54-128 (c) ("[t]he total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted"). The defendant conceded, however, that General Statutes (Rev. to 1999) § 54-125e (c)[8] required

[7] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[8] General Statutes (Rev. to 1999) § 54-125e provides: "(a) Any person convicted of a crime committed on or after October 1, 1998, who received a definite sentence of more than two years followed by a period of special parole shall, at the expiration of the maximum term or terms of imprisonment imposed by the court, be transferred from the custody of the Commissioner of Correction to the jurisdiction of the Chairman of the Board of Parole or, if such person has previously been released on parole pursuant to subsection (a) of section 54-125a or section 54-131a, remain under the jurisdiction of said chairman until the expiration of the period of special parole imposed by the court.

"(b) Any person sentenced to a period of special parole shall be subject to such rules and conditions as may be established by the Board of Parole or its chairman pursuant to section 54-126.

"(c) The period of special parole shall be not less than one year nor more than ten years except that such period shall be not less than ten years nor more than thirty-five years for a person convicted of a violation of subdivision (2) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b or sentenced as a persistent dangerous felony offender pursuant to subsection (f) of section 53a-40 or as a persistent serious felony offender pursuant to subsection (g) of section 53a-40."

the trial court to sentence the defendant to a period of special parole of "not less than ten years . . . ."[9] The defendant maintained, nonetheless, that to the extent that §§ 54-125e (c) and 54-128 (c) conflict, "the benefit should go to the defendant." The trial court disagreed and concluded that the defendant's sentence was not illegal because § 53a-35a (6) plainly authorized a sentence of ten years of imprisonment, and § 54-125e (c) plainly authorized a sentence of ten years of special parole for the offense of sexual assault in the second degree.[10] Further, the trial court concluded that §§ 54-125e (c) and 54-128 (c) do not conflict because § 54-125e (c) unambiguously "carves out an exception [to the maximum statutory limit] for sex offenses." Accordingly, the trial court denied the defendant's motion to correct his sentence, and this appeal followed.

On appeal, the defendant renews the claim that he raised before the trial court. The defendant further claims that his sentence violates the double jeopardy clause of the fifth amendment to the United States constitution because it "constitutes cumulative multiple punishments exceeding what the legislature intended" for the offense of sexual assault in the second degree.[11]

Subsequent references to § 54-125e pertain to the 1999 revision, unless noted otherwise.

[9] Prior to October 1, 1999, § 54-125e (c) required the trial court to impose a period of special parole of "not less than ten years nor more than thirty-five years for a person convicted of . . . [§] 53a-71 . . . ." In 1999, the legislature amended § 54-125e (c); see Public Acts, Spec. Sess., June, 1999, No. 99-2, § 52; to provide that the special parole period "*may* be for more than ten years for a person convicted of . . . [§] 53a-71 . . . ." (Emphasis added.) Because the defendant was convicted of conduct alleged to have occurred before October 1, 1999, when Spec. Sess. P.A. 99-2, § 52, took effect; see footnote 4 of this opinion; it is undisputed that the 1999 amendment is not implicated in the present appeal.

[10] The trial court also noted that the defendant and the state had agreed to a total effective sentence of ten years of imprisonment followed by ten years of special parole during plea negotiations.

[11] The defendant did not preserve this claim in the trial court and, therefore, seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239-40, 567 A.2d 823 (1989).

The state responds that the trial court properly denied the defendant's motion to correct his sentence. Specifically, the state claims that the total length of the defendant's sentence combined is not illegal because the trial court was authorized to sentence the defendant to ten years of imprisonment under § 53a-35a (6), and to ten years of special parole under General Statutes §§ 53a-28 (b) (9)[12] and 54-125e (c). The state further claims that "§ 54-128 (c) does not apply to, much less address, a trial court's authority to impose a particular sentence. Rather § 54-128 (c) establishes the period of incarceration that the board of pardons and paroles can impose on a defendant who has violated special parole." Lastly, the state claims that the defendant's sentence does not violate the double jeopardy clause because it is authorized by §§ 53a-28 (b) (9), 53a-35a (6) and 54-125e (c).

We conclude that the defendant's sentence violates § 54-128 (c) because the total length of the term of imprisonment and term of special parole combined exceeds the maximum term of imprisonment authorized for sexual assault in the second degree. Accordingly, the defendant's sentence is illegal, and we reverse the judgment of the trial court.

As a preliminary matter, we review the trial court's authority to correct an illegal sentence. "This court has held that the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988); see also *State* v. *Mollo*, 63 Conn. App. 487, 490, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001); *State* v. *Tuszynski*, 23

---

[12] General Statutes § 53a-28 (b) provides in relevant part: "Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences . . . (9) a term of imprisonment and a period of special parole as provided in section 54-125e."

Conn. App. 201, 206, 579 A.2d 1100 (1990). Practice Book § 43-22, which provides the trial court with such authority, provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. *State* v. *McNellis*, 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to § 43-22 with the judicial authority, namely, the trial court. See *Copeland* v. *Warden*, 225 Conn. 46, 47 n.2, 621 A.2d 1311 (1993)." (Internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37–38, 779 A.2d 80 (2001).

Ordinarily, a claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard. See, e.g., *State* v. *Henderson*, 93 Conn. App. 61, 66, 888 A.2d 132, cert. denied, 277 Conn. 927, 895 A.2d 800 (2006); *State* v. *Pagan*, 75 Conn. App. 423, 429, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003). In the present case, however, the defendant's claim presents a question of statutory interpretation over which our review is plenary. See, e.g., *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether

the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) Id.

We begin our analysis with the text of the relevant statutes. General Statutes (Rev. to 1999) § 53a-71 (b) provides that "[s]exual assault in the second degree is a class C felony for which nine months of the sentence imposed may not be suspended or reduced by the court." Section 53a-35a provides that "[f]or any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (6) for a class C felony, a term not less than one year nor more than ten years . . . ." Pursuant to the plain language of §§ 53a-35a (6) and 53a-71 (b), a conviction of sexual assault in the second degree carries a minimum sentence of one year of imprisonment and a maximum sentence of ten years of imprisonment, nine months of which are nonsuspendable. In the present case, the trial court sentenced the defendant to ten years of imprisonment. Accordingly, the defendant received the maximum sentence of imprisonment authorized by §§ 53a-35a (6) and 53a-71 (b).

We now turn to the statutory provisions governing special parole. The trial court may sentence a defendant convicted of a criminal offense to "a term of imprisonment and a period of special parole as provided in section 54-125e." General Statutes § 53a-28 (b) (9). Pursuant to § 54-125e (a), "[a]ny person convicted of a crime committed on or after October 1, 1998, who received a definite sentence of more than two years followed by a period of special parole," begins to serve the sentence of special parole after "the expiration of the maximum term or terms of imprisonment imposed by the court . . . ." Once the defendant completes the maximum term of imprisonment, he is transferred to the jurisdiction of the chairman of the board of pardons and paroles (board) and begins to serve the period of special parole "subject to such rules and conditions" established by the board. General Statutes § 54-125e (b). In 2004, the legislature amended § 54-125e so that an alleged violation of a condition of special parole results in a hearing before the board.[13] Public Acts 2004,

[13] Public Acts 2004, No. 04-234, § 5, amended § 54-125e in relevant part by adding the following subsections: "(d) Whenever a parolee has, in the judgment of such parolee's parole officer, violated the conditions of his or her special parole, the board shall cause the parolee to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing, the parolee shall be informed of the manner in which such parolee is alleged to have violated the conditions of such parolee's special parole and shall be advised by the employee of the board conducting the hearing of such parolee's due process rights.

"(e) If such violation is established, the board may: (1) [c]ontinue the sentence of special parole; (2) modify or enlarge the conditions of special parole; or (3) revoke the sentence of special parole.

"(f) If the board revokes special parole for a parolee, the chairperson may issue a mittimus for the commitment of such parolee to a correctional institution for any period not to exceed the unexpired portion of the period of special parole.

"(g) Whenever special parole has been revoked for a parolee, the board may, at any time during the unexpired portion of the period of special parole, allow the parolee to be released again on special parole without court order."

The state claims that P.A. 04-234, § 5, applies to the present case retroactively because it implements a procedural change in the statutory scheme. See, e.g., *State* v. *Skakel*, 276 Conn. 633, 680, 888 A.2d 985 (2006) (we presume

No. 04-234, § 5 (P.A. 04-234). Thus, under the amended revision of the statute, if a violation successfully is established, the board may: "(1) [c]ontinue the sentence of special parole; (2) modify or enlarge the conditions of special parole; or (3) revoke the sentence of special parole." General Statutes § 54-125e (e).

To determine the applicable period of special parole in the present case, we turn to § 54-125e (c), which provides: "[t]he period of special parole shall be not less than one year nor more than ten years *except that such period shall be not less than ten years nor more than thirty-five years for a person convicted of a violation of . . . § 53a-71 . . . .*" (Emphasis added.) General Statutes (Rev. to 1999) § 54-125e (c). As previously explained, the defendant was convicted of sexual assault in the second degree in violation of § 53a-71 (a) (4). Therefore, pursuant to the plain language of § 54-125e (c), the trial court was required to sentence the defendant to a minimum of ten years of special parole. Accordingly, the defendant's sentence of ten years of special parole is authorized by, and, indeed, required by, § 54-125e (c).

Although the defendant's sentence of ten years of imprisonment explicitly is authorized by § 53a-35a (6), and his sentence of ten years of special parole is required by § 54-125e (c), the defendant claims that the *total length of his combined* sentence exceeds the maximum statutory limit for the offense of sexual assault in the second degree. Specifically, the defendant claims that his sentence is illegal because his sentence of special parole potentially exposes him to an additional term of imprisonment after he has finished serv-

"that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary" [internal quotation marks omitted]). For purposes of the present appeal, we assume without deciding that P.A. 04-234, § 5, is a procedural amendment that applies retroactively.

ing his ten year maximum term of imprisonment. The defendant further claims that § 54-128 (c) plainly prohibits the trial court from imposing such an illegal sentence. The state responds that the defendant's sentence is not illegal because his ten year sentence of imprisonment is authorized by §§ 53a-35a (6) and 53a-71 (b), and his ten year sentence of special parole is required by §§ 53a-28 (b) (9) and 54-125e (c). Moreover, the state claims that § 54-128 (c) does not prohibit the sentence imposed by the trial court because § 54-128 (c) plainly refers only to the board's authority to "retain" the defendant after he has violated a condition of special parole, rather than to the trial court's authority to impose a combined sentence of imprisonment and special parole. We agree with the defendant.

Section 54-128 (c) provides in relevant part: "Any person who, during the service of a period of special parole imposed in accordance with subdivision (9) of subsection (b) of section 53a-28, has been returned to any institution of the [d]epartment of [c]orrection for violation of such person's parole, may be retained in a correctional institution for a period equal to the unexpired portion of the period of special parole. The total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted." The first sentence of § 54-128 (c) is plain and unambiguous, and it authorizes the board to imprison a parolee for the unexpired portion of the period of special parole if he violates the conditions of parole. The final sentence of § 54-128 (c), however, is not plain and unambiguous in the present context. Specifically, it is unclear whether, as the defendant claims, the phrase "[t]he total length of the term of incarceration and term of special parole combined" refers to the combined term of imprisonment and special parole that can be imposed by the trial court for

the offense for which the defendant was convicted, or whether, as the state claims, it refers to the length of time the defendant "may be retained" by the board after he has violated the conditions of special parole.[14] Accordingly, we turn to the legislative history of the

[14] The state claims that § 54-128 (c) plainly and unambiguously refers only to the length of time that the defendant may be retained by the board after he has violated the conditions of special parole. In support of this claim, the state points out that § 54-128 is titled "[v]iolation of parole," and utilizes different terminology than the statutes governing the trial court's authority to impose a particular sentence. Specifically, the state observes that § 54-128 (c) refers to "term of *incarceration*" and to "*term* of special parole," whereas §§ 53a-28 (b) (9) and 54-125 (e) refer to "term of *imprisonment*" and to "*period* of special parole," and § 53a-35a refers to "sentence of *imprisonment*." (Emphasis added.) Because "[t]he use of different words [or the absence of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention"; (internal quotation marks omitted) *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988); the state maintains that "the phrases 'term of incarceration' and 'term of special parole' [in § 54-128 (c)] must be interpreted as referring to something else relating specifically to confinement after a violation of special parole." We reject this claim. Section 54-128 (c) provides in relevant part: "The total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted." The state conceded in oral argument before this court that the phrase "maximum sentence of incarceration authorized for the offense for which the person was convicted" refers to the ten year maximum sentence of imprisonment authorized by § 53a-35a (6). Because the state concedes that the term "incarceration" in the latter portion of § 54-128 (c) is synonymous with the term "imprisonment" in § 53a-35a (6), it is logical to presume that the legislature used the terms incarceration and imprisonment interchangeably. Moreover, the terms incarceration and imprisonment are used as synonyms in common parlance. See General Statutes § 1-1 (a) ("[i]n the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language"); *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 539, 791 A.2d 489 (2002) ("[t]o ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term" [internal quotation marks omitted]); Webster's Third New International Dictionary (defining "incarceration" as "a confining or state of being confined: imprisonment," and defining "imprisonment" as "the act of imprisoning or the state of being imprisoned: confinement"). Accordingly, it is unclear whether the phrase "term of incarceration" in § 54-128 (c) refers to: (1) the trial court's authority to sentence a defendant to a term of imprisonment for the offense for which he was convicted; or (2) the board's

statutes governing special parole to resolve the ambiguity.

In 1998, the legislature enacted Public Acts 1998, No. 98-234 (P.A. 98-234), which implemented a system of special parole in the state. The legislative history of P.A. 98-234 reveals that special parole was "intended to operate as a sentencing option in cases where the judge wanted additional supervision of a defendant after the completion of his prison sentence. Michael Mullen, the chairman of the Connecticut board of parole testified before the judiciary committee and described special parole as a 'sentencing option which ensures intense supervision of convicted felons after they're released to the community and allows the imposition of parole stipulations on the released inmate to ensure their successful incremental re-entry into society or if they violate their stipulations, speedy re-incarceration before they commit another crime.' . . . Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1998 Sess., p. 1013." *State* v. *Boyd*, 272 Conn. 72, 79 n.6, 861 A.2d 1155 (2004).

The provision that is now codified at § 54-128 (c), was adopted in response to the testimony of Deborah Del Prete Sullivan, executive assistant public defender and legal counsel for the office of the chief public defender. Sullivan submitted a letter to the judiciary

authority to retain a defendant for a violation of a condition of special parole. Moreover, if the legislature intended the phrase "term of incarceration" to refer to a trial court's authority to sentence a defendant to a term of imprisonment under § 53a-35a (6), it is logical to presume that the phrase "term of special parole" similarly refers to the trial court's authority to sentence a defendant to a period of special parole under § 54-125e. Accordingly, we conclude that § 54-128 (c) does not plainly and unambiguously refer to the length of the time that the defendant may be retained by the board for a violation of the conditions of special parole, despite the title of the statute. See *Burke* v. *Fleet National Bank*, 252 Conn. 1, 13, 742 A.2d 293 (1999) (title of statute is not determinative of, but may provide evidence of, statutory meaning).

committee stating that the bill as originally drafted, "would allow the total number of years of imprisonment and the term of special parole (for which a person can be incarcerated) combined to exceed the maximum sentence which can be imposed for the offense. As a result, a person could be incarcerated for an extensive period of time well in excess of the maximum sentence permitted by the penal statute if he/she were to violate special parole. The concept of parole is that it is an extension of the original period of incarceration imposed as a sentence by the court. The language proposed would not pass constitutional muster as a person could receive increased penalties without due process. These additional penalties could also violate the constitutional right against double jeopardy.

"A suggestion is to add language to line 196 in subsection (c) of [§] 6 as follows:

"THE TOTAL LENGTH OF THE TERM OF INCARCERATION AND TERM OF SPECIAL PAROLE COMBINED SHALL NOT EXCEED THE MAXIMUM SENTENCE OF INCARCERATION AUTHORIZED FOR THE OFFENSE FOR WHICH THE PERSON WAS CONVICTED." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1998 Sess., p. 1325.

The judiciary committee adopted Sullivan's proposed amendment and favorably reported the substitute bill out of committee. See Substitute Senate Bill No. 568, 1998 Sess., § 6 (c). In light of the constitutional concerns raised by Sullivan, and the legislature's wholesale adoption of the proposed amendment, we conclude that the legislature intended to resolve the alleged constitutional infirmities of the original bill by adding the language recommended by Sullivan that is now codified at § 54-128 (c). Accordingly, it is apparent that the legislature intended to prevent the trial court from sentencing a defendant to a term of imprisonment and to a period

of special parole, the total combined length of which exceeds the maximum sentence of imprisonment for the offense for which the defendant was convicted.

Our conclusion further is supported by the office of legislative research's analysis of P.A. 98-234. *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 293, 865 A.2d 474 (2005) ("[w]e may consult the analysis of a bill by the office of legislative research to ascertain legislative intent"). The office of legislative research described special parole as follows: "Special parole may be *imposed* for one to [ten] years, but an individual who has been convicted of a felony sexual assault offense or sentenced as a persistent dangerous felony offender or persistent serious felony offender may be sentenced to [ten] to [thirty-five] years of special parole. The combination of the term of imprisonment *imposed* and the term of special parole cannot exceed the maximum sentence that may be *imposed* for the offense." (Emphasis added.) Office of Legislative Research, Bill Analysis of Substitute Senate Bill No. 568, p. 1. Moreover, in its analysis, the office of legislative research discussed the board's authority to retain a parolee for a violation of special parole in a section of the report titled "Violation of Special Parole." See id., p. 2 ("[a]n individual returned to the custody of the [c]ommissioner of [c]orrection for violating parole may be retained in the institution from which he was paroled for a period equal to the unexpired portion of the period of special parole"). The foregoing analysis exhibits a legislative intent to restrict the authority of the trial court to impose a combined sentence of a term of imprisonment and a period of special parole that "exceed[s] the maximum sentence that may be imposed for the offense." Id., p. 1. Accordingly, we conclude that § 54-128 (c) sets forth the maximum statutory limit to which a trial court can sentence a defendant to a com-

bined term of imprisonment and period of special parole under § 53a-28 (b) (9).[15]

The trial court sentenced the defendant in the present case to ten years of imprisonment followed by ten years of special parole for the offense of sexual assault in the second degree. The total length of the term of imprisonment and term of special parole combined amounts to twenty years. The maximum sentence of imprisonment for sexual assault in the second degree is ten years. General Statutes § 53a-35a (6). Accordingly, the defendant's sentence violates § 54-128 (c) because the total length of the term of imprisonment and period of special parole combined exceeds the maximum sentence of imprisonment for sexual assault in the second degree.

We recognize that the trial court was required to sentence the defendant to a minimum of one year of imprisonment under § 53a-35a (6), and to a minimum of ten years of special parole under § 54-125e (c). The total length of the minimum term of imprisonment and the minimum period of special parole combined amounts to eleven years. As such, the trial court was *required* to impose a combined term of imprisonment and period of special parole that exceeds the maximum sentence of imprisonment for sexual assault in the second degree. At the same time, pursuant to § 54-128 (c), the trial court was *prohibited* from imposing a combined term of imprisonment and period of special parole that exceeds the maximum sentence of imprisonment for sexual assault in the second degree. Accordingly, under the circumstances of the present case, an irreconcilable conflict exists between the sentencing requirements of §§ 54-125e (c) and 54-128 (c).[16]

To resolve the conflict, we return to the legislative history of P.A. 98-234. As previously explained, the judiciary committee amended the language of the original bill in response to Sullivan's concern that it "would not pass constitutional muster" because it "would allow the total number of years of imprisonment and the term

---

[15] In light of the language and legislative history of § 54-128 (c), we disagree with the trial court that § 54-125e (c) unambiguously "carves out an exception [to the maximum statutory limit] for sex offenses."

[16] The legislature has since amended the sentencing provisions of § 54-125e (c). See footnote 9 of this opinion.

of special parole . . . combined to exceed the maximum sentence" authorized for the offense. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1998 Sess., p. 1325. Thus, the judiciary committee adopted the amendatory language proposed by Sullivan, now codified at § 54-128 (c), to resolve the alleged constitutional infirmities of the original bill. See Substitute Senate Bill No. 568, 1998 Sess., § 6 (c); see also 2A N. Singer, Statutes and Statutory Construction (6th Ed. 2000) § 48:18, pp. 484–85 ("[a]doption of an amendment is evidence that the legislature intends to change the provisions of the original bill"). Accordingly, we conclude that when the sentencing provisions of §§ 54-125e (c) and 54-128 (c) conflict, the legislature intended the maximum statutory limit in § 54-128 (c) to control.

Because the combined length of the defendant's sentence to a term of ten years imprisonment and to ten years special parole exceeds the maximum statutory limit for the offense of sexual assault in the second degree,[17] we conclude that the defendant's sentence for sexual assault in the second degree is illegal.[18] Accordingly, the trial court improperly denied the defendant's motion to correct an illegal sentence, and we remand the present case to that court for resentencing in accordance with *State* v. *Raucci*, 21 Conn. App. 557, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), and *State* v. *Miranda*, 260 Conn. 93, 127–30, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002.)[19]

---

[17] The state contends that the defendant's claim is not ripe for review because the defendant "has not yet violated special parole and may never violate" special parole. We reject this claim. As explained previously in this opinion, § 54-128 (c) prohibits the trial court from *imposing* a term of imprisonment followed by a period of special parole that exceeds the maximum term of imprisonment for the offense for which the person was convicted. In any event, Practice Book § 43-22 plainly provides that "[t]he judicial authority may *at any time* correct an illegal sentence . . . ." (Emphasis added.)

[18] In light of our conclusion, we do not reach the defendant's double jeopardy claim.

[19] In *State* v. *Raucci*, supra, 21 Conn. App. 562, the Appellate Court recognized that a defendant who has appealed successfully from a multicount conviction and punishment, or who has prevailed on his motion to correct an illegal sentence, "has voluntarily called into play the validity of the entire sentencing package, and, thus, the proper remedy is to vacate it in its entirety." The Appellate Court therefore adopted the " 'aggregate package' " theory of resentencing, which recognizes that "when a trial court imposes [a] sentence pursuant to a multicount conviction, its intent ordinarily is to structure the sentences on the various counts so as to arrive at a total

Although not raised by the defendant, because we remand the present case to the trial court for resentencing, we note that the defendant's sentence for sexual assault in the third degree also violates § 54-128 (c) because the total length of the term of imprisonment and period of special parole combined exceeds the maximum statutory limit.[20] Accordingly, the defendant's sentence for sexual assault in the third degree, like his sentence for sexual assault in the second degree, is illegal.

The judgment of the trial court is reversed and the case is remanded to that court for resentencing according to law.

In this opinion the other justices concurred.

effective sentence that it deems appropriate for both the crimes and the criminal." Id., 563. Essentially, "the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions, and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent." Id., 562. Accordingly, the Appellate Court concluded that "the [resentencing] court's power under these circumstances is limited by its original sentencing intent as expressed by the original total effective sentence, and, furthermore, that this power is permissive, not mandatory. Although the court may reconstruct the sentencing package to conform to its original intent, it is not required to do so. It may, therefore, simply eliminate the [illegal portion of the] sentence previously imposed . . . and leave the other sentences intact; or it may reconstruct the sentencing package so as to reach a total effective sentence that is less than the original sentence but more than that effected by the simple elimination of the [illegal portion of the original] sentence . . . . The guiding principle is that the court may resentence the defendant 'to achieve a rational, coherent [sentence] in light of the remaining convictions,' as long as the revised total effective sentence does not exceed the original." Id., 563, quoting *United States* v. *Bentley*, 850 F.2d 327, 328 (7th Cir.), cert. denied, 488 U.S. 970, 109 S. Ct. 501, 102 L. Ed. 2d 537 (1988); see also *State* v. *Miranda*, supra, 260 Conn. 127–30 (adopting aggregate package theory of resentencing for reasons articulated in *Raucci*).

[20] The trial court sentenced the defendant to five years of imprisonment followed by five years of special parole for his conviction of sexual assault in the third degree. At the time of the crime, sexual assault in the third degree was a class D felony that carried a minimum sentence of one year of imprisonment and a maximum sentence of five years of imprisonment. See General Statutes § 53a-35a (7); General Statutes (Rev. to 1999) § 53a-72a (b). As such, under § 54-128 (c), the total length of the combined term of imprisonment and period of special parole imposed by the trial court cannot exceed five years. Because the total length of the defendant's sentence amounts to ten years, five years of imprisonment and five years of special parole, we conclude that his sentence for sexual assault in the third degree violates § 54-128 (c) because it exceeds the maximum statutory limit.

The defendant does not challenge his sentence for his conviction of risk of injury to a child and this decision does not affect his sentence as to that offense.