******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* VICTOR O.*
(SC 19459)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued September 18, 2015—officially released January 19, 2016*

*Stephan E. Seeger*, with whom was *Igor G. Kuperman*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Paul Ferencek*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Victor O., appeals from the trial court's denial of his motion to correct an allegedly illegal sentence, which was imposed upon his conviction of, inter alia, sexual assault in the first degree in violation of General Statutes (Rev. to 2001) § 53a-70 (a) (2), as amended by Public Acts 2002, No. 02-138, § 5 (P.A. 02-138).[1] He claims that the trial court improperly failed to sentence him to a period of special parole pursuant to § 53a-70 (b) (3), which provides that "[a]ny person found guilty under [§ 53a-70] shall be sentenced to a term of imprisonment and a period of special parole pursuant to subsection (b) of section 53a-28[2] which together constitute a sentence of at least ten years." (Footnote added.) The state contends that the sentence that the trial court imposed was proper because § 53a-70 (b) (3) does not *require* a period of special parole; rather, the state maintains, it requires only that any period of special parole that *may* be imposed shall, along with the accompanying term of imprisonment, constitute a total sentence of not less than ten years. We agree with the state and, accordingly, affirm the trial court's denial of the defendant's motion.

The following procedural history is relevant to our analysis of the defendant's claim. On November 17, 2005, following a jury trial, the defendant was found guilty of one count of sexual assault in the first degree in violation of § 53a-70 (a) (2), a class A felony; see General Statutes (Rev. to 2001) § 53a-70 (b) (2), as amended by P.A. 02-138, § 5;[3] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2), as amended by P.A. 02-138, § 4. The court presiding over the defendant's criminal trial rendered judgment in accordance with the jury verdict and sentenced the defendant to a total effective term of thirty years imprisonment, execution suspended after fifteen years, and twenty years of probation. More specifically, the court sentenced the defendant to twenty years of incarceration, execution suspended after twelve years, and twenty years of probation with respect to count one (first degree sexual assault), twenty years of incarceration, execution suspended after twelve years, and twenty years of probation with respect to count two (risk of injury), to run concurrently with the sentence imposed in connection with count one, and ten years of incarceration, execution suspended after three years, and twenty years of probation with respect to count three (risk of injury), to run consecutively to the sentence imposed in connection with count one.

The defendant appealed from the judgment of conviction, claiming, inter alia, that the sentence that the court imposed for his conviction of sexual assault in the first degree was illegal because § 53a-70 (b) (3), by its plain terms, requires that persons convicted of that offense

be sentenced to a period of special parole. See *State v. Victor O.*, 301 Conn. 163, 166, 193, 20 A.3d 669, cert. denied,     U.S.    , 132 S. Ct. 583, 181 L. Ed. 2d 429 (2011). In its brief to this court, the state agreed that the court had imposed an illegal sentence but not for the reason asserted by the defendant. The state argued, rather, that the case should be remanded for resentencing because the defendant's conviction under § 53a-70 (a) (2) was a class A felony, and, under General Statutes § 53a-29 (a),[4] probation is prohibited for persons convicted of a class A felony. See *State* v. *Victor O.*, Conn. Supreme Court Records & Briefs, December Term, 2010, State's Brief p. 40. The state observed, however, that sexual assault in the first degree under § 53a-70 can be either a class A or class B felony, depending on the circumstances, and that, when the offense is a class B felony, § 53a-29 (f)[5] expressly authorizes a sentence of probation of "not less than ten years or more than thirty-five years  . . . ." The state maintained, therefore, that, contrary to the defendant's interpretation of the statutory scheme, and § 53a-70 (b) (3) in particular, a sentencing court is authorized to impose a period of probation for a violation of § 53a-70 that is a class B felony, but, for a class A felony violation, the only authorized form of supervised release is special parole.

Without any discussion of the parties' competing interpretations, this court remanded the case for resentencing with respect to the defendant's conviction of sexual assault in the first degree, stating in relevant part: "As the state concedes, the sentence that the trial court imposed does not comply with § 53a-70 (b) (3) because it includes a period of probation rather than a period of special parole. Accordingly, the case must be remanded  . . .  for resentencing [with respect to] the defendant's conviction of sexual assault in the first degree." *State* v. *Victor O.*, supra, 301 Conn. 193.

Thereafter, the trial court resentenced the defendant to a term of imprisonment of twelve years for his conviction of sexual assault in the first degree. The defendant's sentences on the other two counts remained the same. Accordingly, the defendant's total effective sentence after resentencing was the same as before his resentencing: thirty years of incarceration, execution suspended after fifteen years, and twenty years of probation. Subsequently, the defendant filed a motion to correct an allegedly illegal sentence in which he claimed that the new sentence was illegal under § 53a-70 (b) (3), as interpreted by this court in *State* v. *Victor O.*, supra, 301 Conn. 193, because the sentence did not include a period of special parole. The defendant further claimed that, because a new sentence cannot exceed the original total effective sentence imposed; see *State* v. *Raucci*, 21 Conn. App. 557, 563, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990); and because parole is deemed to be an extension of the original period of incarceration; see *State* v. *Tabone*, 292 Conn. 417, 429–

30, 973 A.2d 74 (2009); the trial court was required to deduct the period of special parole mandated by § 53a-70 (b) (3) from his original total effective prison sentence, thereby leaving him with fourteen rather than fifteen years to serve.

The trial court denied the defendant's motion. The court concluded that *Victor O.* did not hold that the defendant's original sentence was unlawful for the reason advanced by the defendant, namely, that, under § 53a-70 (b) (3), all persons who commit first degree sexual assault must be sentenced to a period of special parole. The court concluded, rather, that the defendant's sentence was unlawful because it included a period of probation, which is prohibited for persons convicted of a class A felony. The trial court further explained, consistent with the interpretation advocated by the state, that § 53a-70 (b) (3) simply requires that, in the event that the court elects to impose a split sentence of incarceration and special parole, as authorized by General Statutes § 53a-28 (b) (9),[6] the minimum combined sentence must total a period of at least ten years.

In reaching its determination, the trial court observed that, under well established principles of statutory construction, a legislative scheme must be construed so as to harmonize and give effect to its various parts. The court further observed that, under General Statutes § 54-128 (c),[7] a sentence that consists of incarceration followed by a period of special parole cannot exceed the maximum sentence authorized for the underlying offense. The court explained that, under the defendant's interpretation of § 53a-70 (b) (3), a sentencing court could never impose the maximum term of imprisonment authorized for a class A felony violation of § 53a-70 because of the requirement that the sentence include a period of special parole, which, in combination with any term of imprisonment, cannot exceed the maximum allowable sentence. The court concluded that the legislature reasonably could not have intended such a result.

On appeal to this court,[8] the defendant renews the claim he raised in the trial court, namely, that § 53a-70 (b) (3), by its plain and unambiguous terms, and as interpreted by this court in *State* v. *Victor O.*, supra, 301 Conn. 193, requires that he be sentenced to a period of special parole for his conviction of sexual assault in the first degree. We disagree.

We first address the defendant's contention that the issue of statutory interpretation presented in this appeal was decided by this court in *State* v. *Victor O.*, supra, 301 Conn. 193. This claim merits little discussion. Although, in hindsight, it would have benefited the parties if we *had* decided the issue in that case, we did not do so in light of the state's concession that the defendant's sentence was illegal. See id. Instead, in light of that concession, we simply remanded the case to

the trial court for resentencing, without considering whether, on remand, the trial court was required to sentence the defendant to a period of special parole. See id. Indeed, our entire discussion of the defendant's claim relating to his sentence consisted of four sentences at the end of the decision, in which we set forth the claim, the relevant statute, the state's concession, and our disposition of the case in light of that concession. Id. To the extent that anything we may have said therein can be construed as deciding the somewhat challenging question of statutory interpretation presented by the present appeal, it was not our intention to do so.[9] We now turn to that question.

It is axiomatic that, in construing a statute, the objective of this court is to ascertain and give effect to the apparent or expressed intent of the legislature. See, e.g., *State* v. *Smith*, 317 Conn. 338, 346, 118 A.3d 49 (2015). Toward that end, "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to [the broader statutory scheme]. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 467, 108 A.3d 1083 (2015). It also is well established that, "[i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552, 46 A.3d 112 (2012); see also *State* v. *Tabone*, supra, 292 Conn. 434 ("we are bound to harmonize otherwise conflicting statutes to the maximum extent possible without thwarting their intended purpose").

As we previously explained, § 53a-70 (b) (3) provides in relevant part that any person who is found guilty of sexual assault in the first degree under § 53a-70 "shall be sentenced to a term of imprisonment and a period of special parole . . . which together constitute a sentence of at least ten years." Contrary to the defendant's contention, we do not believe that § 53a-70 (b) (3) is susceptible of only one interpretation. If one focuses solely on the first clause, as the defendant does, the statute is most reasonably understood to require that

all persons convicted of first degree sexual assault shall be sentenced to a term of imprisonment and a period of special parole. If, however, one reads the second clause as a restrictive modifier of the first, as the state does, the provision reasonably may be construed as a mandatory minimum sentence provision requiring merely that any sentence of imprisonment and special parole add up to a period of at least ten years. We agree with the state and the trial court that, when the statute is read in relation to the broader sentencing scheme, it becomes evident that the second interpretation is the more reasonable one because it harmonizes the statutory scheme into a coherent and cohesive whole, whereas the interpretation advocated by the defendant creates ambiguity within that scheme.

As the state contends, construing § 53a-70 (b) (3) as a minimum sentencing provision rather than as requiring special parole in all cases avoids two fundamental conflicts. First, it avoids a conflict with General Statutes § 53a-35a (4),[10] which, with exceptions inapplicable to this case, authorizes a maximum term of imprisonment of twenty-five years for persons convicted of any class A felony. As the trial court explained, if we were to adopt the defendant's interpretation of § 53a-70 (b) (3), a sentencing court never could impose that sentence on a person convicted of violating § 53a-70 because of the requirement of § 54-128 (c) that the length of the combined sentence of imprisonment and special parole not exceed the maximum sentence authorized for the underlying offense. The second interpretation also avoids an inconsistency in § 53a-29 (f), which expressly authorizes the trial court to sentence persons convicted of certain violations of § 53a-70 to a term of probation.[11] See General Statutes § 53a-29 (f) ("[t]he period of probation, unless terminated sooner as provided in section 53a-32, shall be not less than ten years or more than thirty-five years for conviction of a violation of . . . section 53a-70"). As the state maintains, were we to adopt the defendant's interpretation of § 53a-70 (b) (3) as requiring special parole in all cases, it would effectively nullify the portion of § 53a-29 (f) expressly authorizing probation in some of those cases, which would be in contravention of the rule that, whenever possible, we must read statutes to avoid "conflict that would result in a nullification of one by the other . . . ."[12] (Internal quotation marks omitted.) *Stern* v. *Allied Van Lines, Inc.*, 246 Conn. 170, 179, 717 A.2d 195 (1998); see also *Franco* v. *East Shore Development, Inc.*, 271 Conn. 623, 632, 858 A.2d 703 (2004) (in absence of any indication that one statute was intended to supersede or to nullify another, we read two provisions to give both of them effect).

Our interpretation also comports with the legislative history surrounding § 53a-29 (f) and General Statutes § 54-125e, the special parole statute. As this court previously has explained, prior to 1995, "the maximum

term of probation for . . . a violation of § 53a-70 . . . was five years. See [e.g.] General Statutes (Rev. to 1985) § 53a-29 (d). In 1995, the legislature, in response to a growing concern about sex offender recidivism, amended . . . § 53a-29 . . . by enacting No. 95-142, § 2, of the 1995 Public Acts, to require the term of probation to be set at not less than ten nor more than thirty-five years for a defendant convicted of violating § 53a-70." (Footnote omitted.) *State* v. *Kelly*, 256 Conn. 23, 89, 770 A.2d 908 (2001). Thereafter, in 1998, "[t]he legislature created the concept of 'special parole' as a new sentencing option . . . by enacting § 54-125e. See Public Acts 1998, No. 98-234, § 3 [P.A. 98-234]." *State* v. *Boyd*, 272 Conn. 72, 78, 861 A.2d 1155 (2004). The legislative history surrounding § 54-125e "indicates that it was intended to operate as a sentencing option in cases [in which] the judge wanted additional supervision of a defendant after the completion of his prison sentence. Michael Mullen, the chairman of the Connecticut [B]oard of [P]arole, testified before the [J]udiciary [C]ommittee and described special parole as a 'sentencing option [that] ensures intense supervision of convicted felons after they're released to the community and allows the imposition of parole stipulations on . . . released inmate[s] to ensure their successful incremental [reentry] into society or if they violate their stipulations, speedy [reincarceration] before they commit [other] crime[s].' " (Emphasis omitted.) Id., 79 n.6, quoting Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1998 Sess., p. 1013.

At the same time that it enacted § 54-125e, the legislature amended § 54-128 to provide that a sentence consisting of a term of imprisonment followed by a period of special parole "shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted." P.A. 98-234, § 4, codified at General Statutes § 54-128 (c). As we explained in *State* v. *Tabone*, supra, 292 Conn. 417, the legislature, in enacting § 54-125e "intended to permit the imposition of special parole as a sentencing option [that] ensures intense supervision of convicted felons after [they are] released to the community and allows the imposition of parole stipulations on the released inmate. At the same time, the legislature intended to prevent the trial court from sentencing a defendant to a term of imprisonment and to a period of special parole, the total combined length of which exceeds the maximum sentence of imprisonment for the offense [of] which the defendant was convicted."[13] (Internal quotation marks omitted.) Id., 434–35. "It is clear, therefore, that the legislature intended that special parole, as a form of supervised release, should be available to trial courts, provided that its imposition, in combination with a term of incarceration, does not exceed the maximum statutory period of incarceration permitted by law." Id., 435.

As originally enacted, subsection (c) of § 54-125e pro-

vided that "[t]he period of special parole shall be not less than one year nor more than ten years except that such period shall be not less than ten years nor more than thirty-five years" for persons who committed certain offenses, including first and second degree sexual assault. P.A. 98-234, § 3, codified at General Statutes (Rev. to 1999) § 54-125e (c).[14] This provision mirrored the requirement of § 53a-29 (f)—then General Statutes (Rev. to 1999) § 53a-29 (e)—that the period of probation for first and second degree sexual assault, among other crimes, be "not less than ten years or more than thirty-five years . . . ." General Statutes § 53a-29 (f). Within one year of its enactment, however, it became apparent that the ten year mandatory minimum requirement of General Statutes (Rev. to 1999) § 54-125e (c), when added to the nine month mandatory minimum prison sentence for second degree sexual assault; see General Statutes (Rev. to 1999) § 53a-71 (b); exceeded the ten year maximum sentence authorized for second degree sexual assault under § 54-128 (c). See *State* v. *Tabone*, 279 Conn. 527, 543–44, 902 A.2d 1058 (2006) (discussing conflict between General Statutes [Rev. to 1999] § 54-125e [c] and § 54-128 [c], as applied to General Statutes [Rev. to 1999] § 53a-71).

To remedy this problem, and to prevent others like it from occurring, the legislature passed Public Acts, Spec. Sess., June, 1999, No. 99-2, § 52 (Spec. Sess. P.A. 99-2), which amended General Statutes (Rev. to 1999) § 54-125e (c)[15] to make the imposition of a term of special parole of more than ten years discretionary rather than mandatory. See *State* v. *Tabone*, supra, 292 Conn. 435–36 ("the legislature, in apparent recognition of the confusion it had created upon enacting [General Statutes (Rev. to 1999)] § 54-125e [c], amended that statute shortly after its enactment to remove the mandatory minimum period of special parole"). Specifically, Spec. Sess. P.A. 99-2, § 52, amended General Statutes (Rev. to 1999) § 54-125e (c) to provide that the period of special parole for the specified offenses "*may* be for more than ten years" rather than providing that it "shall be not less than ten years nor more than thirty-five years . . . ." (Emphasis added.) Spec. Sess. P.A. 99-2, § 52. In the same public act, the legislature amended General Statutes (Rev. to 1999) § 53a-70 (b)[16] to include the language at issue in this appeal. See Spec. Sess. P.A. 99-2, § 49,[17] codified at General Statutes (Rev. to 2001) § 53a-70 (b). The legislature added similar language to General Statutes (Rev. to 1999) § 53a-70a[18] (aggravated sexual assault in first degree) and General Statutes (Rev. to 1999) § 53a-72b[19] (third degree sexual assault with firearm). See Spec. Sess. P.A. 99-2, §§ 50 and 51. In all three statutes, the language was added to the section of the statute containing the nonsuspendable portion of a defendant's sentence.

Although our research has not revealed any legislative history explaining the rationale for these amend-

ments, it is well established that, "[i]n determining the true meaning of a statute when there is genuine uncertainty as to how it should apply, identifying the problem in society to which the legislature addressed itself by examining the legislative history of the statute under litigation is helpful." *State* v. *Campbell*, 180 Conn. 557, 562, 429 A.2d 960 (1980). In the present case, the problem that the legislature sought to address in 1999 when it amended General Statutes (Rev. to 1999) § 54-125e (c) was the irreconcilable conflict between that provision and the requirement of § 54-128 (c) that the total combined period of imprisonment and special parole not exceed the maximum authorized sentence for an offense. Because there is no indication that the legislature had any other purpose in amending General Statutes (Rev. to 1999) § 54-125e (c), the most likely reason for the simultaneous amendments to General Statutes (Rev. to 1999) §§ 53a-70, 53a-70a and 53a-72b was to ensure that, notwithstanding the change to General Statutes (Rev. to 1999) § 54-125e (c), which was needed to harmonize certain provisions of the new special parole statute, persons who commit the most serious sexual offenses would remain subject to a longer minimum period of special parole in cases in which the trial court chooses to impose such a sentence on them.

This interpretation is sensible not only because it comports with the original intent of § 54-125e (c), that is, requiring a longer period of special parole for certain offenses, but also because we do not believe that the legislature would, in so cryptic a fashion, turn what was intended to be a new sentencing option into a sentencing directive without any discussion of its reasons for doing so. We agree with the state, moreover, that tying a sentencing court's hands in this manner—that is, limiting it to a single punishment for persons convicted of first degree sexual assault—runs counter to the legislative intent, reflected throughout the sentencing scheme, that sentencing courts be afforded "wide discretion to tailor a just sentence in order to fit a particular defendant and his crimes"; (internal quotation marks omitted) *State* v. *Johnson*, 316 Conn. 34, 40, 111 A.3d 447 (2015); and be provided with an array of tools with which to exercise such discretion. See, e.g., General Statutes § 53a-28 (b) (authorizing nine different sentences from which trial court may choose in sentencing convicted persons).

We also can perceive no reason, and the defendant has proffered none, why the legislature, having extended the maximum period of supervised release for sexual offenders to thirty-five years, would reduce by almost 50 percent (seventeen years) the amount of time that the most serious sexual offenders are subject to supervised release. That is precisely what would occur, however, if we were to adopt the defendant's interpretation of § 53a-70 (b) (3).[20] To the extent that the defendant contends that the legislature may have

intended this anomalous result because special parole allows for more intensive supervision of convicts after they are released from prison, we are not persuaded. Although it may be true that the terms of release for special parolees are more restrictive than they are for probationers in the short term, it is undisputed that probation exposes a defendant to imprisonment for a much longer period of time, arguably making it, depending on one's perspective, a considerably more onerous punishment.[21] For this reason, and for the reasons that we previously discussed, we conclude that the trial court correctly determined that § 53a-70 (b) (3) does not mandate that persons convicted of first degree sexual assault be sentenced to a period of imprisonment and special parole; it provides, rather, that, if the court elects to impose such a sentence, then the total combined period of imprisonment and special parole must total at least ten years.[22]

In reaching our conclusion, we are mindful that our rather intricate sentencing scheme is not always a model of clarity and that sometimes it is difficult to ascertain the rationale underlying all of its components. Nevertheless, it is our duty to seek to reconcile that scheme into a coherent system, in a manner that effectuates, to the greatest extent possible, the legislative intent behind the scheme. We believe that we have done so in the present case.

The trial court's denial of the defendant's motion to correct an illegal sentence is affirmed.

In this opinion the other justices concurred.

* In accordance with the policy of protecting the privacy interests of victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes (Rev. to 2001) § 53a-70 (a), as amended by P.A. 02-138, § 5, provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

Hereinafter, all references to § 53a-70 are to the revision of 2001, as amended by P.A. 02-138, § 5, unless otherwise noted.

[2] General Statutes § 53a-28 (b) authorizes the imposition of various sentences, including a term of imprisonment and a period of special parole. See footnote 6 of this opinion.

[3] Section 53a-70 (b) (2) provides that a violation of § 53a-70 (a) (2) is a class A felony. Section 53a-70 (b) (2) also provides for a nonsuspendable sentence of ten years if the victim of a sexual assault under § 53a-70 (a) (2) is less than ten years of age. Because the defendant's victim was under ten years of age when the sexual assault occurred, the trial court was required to sentence the defendant to a nonsuspendable prison term of not less than ten years.

[4] General Statutes § 53a-29 (a) provides: "The court may sentence a person to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in the defendant's case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice."

Although § 53a-29 has been amended several times since the defendant's commission of the crimes that formed the basis of his conviction, those amendments have no bearing on the merits of this appeal. In the interest

of simplicity, we refer to the current revision of § 53a-29 throughout this opinion.

[5] General Statutes § 53a-29 (f) provides in relevant part: "The period of probation, unless terminated sooner as provided in section 53a-32, shall be not less than ten years or more than thirty-five years for conviction of a violation of subdivision (2) of subsection (a) of section 53-21 or section 53a-70 . . . ."

Subsection (f) of § 53a-29 was codified at General Statutes § 53a-29 (e), as amended by Public Acts 2001, No. 01-84, § 14, when the defendant committed the crimes that formed the basis of his conviction. The relevant language of that statutory provision has not changed in any material respect.

[6] General Statutes § 53a-28, which sets forth the nine sentences that may be imposed for the commission of an offense, provides in relevant part: "(a) Except as provided in section 17a-699 and chapter 420b, to the extent that the provisions of said section and chapter are inconsistent herewith, every person convicted of an offense shall be sentenced in accordance with this title.

"(b) Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by section 18-65a or 18-73; or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge; or (6) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a period of probation or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65a or 18-73; or (8) a sentence of unconditional discharge; or (9) a term of imprisonment and a period of special parole as provided in section 54-125e. . . ."

[7] General Statutes § 54-128 (c) provides in relevant part: "The total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted."

[8] The defendant appealed to the Appellate Court from the trial court's denial of the defendant's motion, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[9] As we previously noted, in support of his contention that § 53a-70 (b) (3) requires that he be sentenced to a period of special parole, the defendant relies on our statement in *State* v. *Victor O*., supra, 301 Conn. 163, that, "[a]s the state concedes, the sentence that the trial court imposed does not comply with § 53a-70 (b) (3) because it includes a period of probation rather than a period of special parole." Id., 193. Although we recognize that it is possible to construe this statement as indicating that the defendant must be resentenced to a period of special parole instead of a period of probation, we intended only to explain that probation was prohibited and that special parole was the only form of supervised release that could be imposed. Indeed, the state did *not* concede that the defendant's sentence was illegal because it should have included a period of special parole; the state conceded only that probation was not an authorized sentence because the defendant had been convicted of a class A felony. In fact, the state expressly argued that the trial court is never *required* to sentence a defendant to special parole but that, if the court does elect to impose such a sentence, then the term of imprisonment and period of special parole together must total at least ten years.

[10] Section 53a-35a (4) was codified at General Statutes (Rev. to 2001) § 53a-35a (3) when the defendant committed the crimes that formed the basis of his conviction. Although the language of that statutory provision has changed somewhat, those changes do not bear on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute, unless otherwise noted.

[11] As we previously noted, under § 53a-29 (a), the court may not impose probation for a violation of § 53a-70 that constitutes a class A felony but may do so for a violation of § 53a-70 that constitutes a class B felony. See footnotes 4 and 5 of this opinion and accompanying text.

[12] Relying on the principle "that specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling"; (internal quotation marks omitted) *Branford* v. *Santa Barbara*, 294 Conn. 803, 813, 988 A.2d 221 (2010); the defendant argues that there is no conflict between §§ 53a-70

(b) (3) and 53a-35a (4) because the latter statute provides that the sentencing ranges established thereunder shall apply "unless the section of the general statutes that defines or provides the penalty for the crime specifically provides otherwise"; General Statutes § 53a-35a; and § 53a-70 (b) (3) can be interpreted as creating such an exception to § 53a-35a. The defendant's argument is unavailing because § 53a-70 (b) (3) does not purport to provide a sentencing range for persons convicted of first degree sexual assault but, instead, establishes the minimum length of a combined sentence of imprisonment and special parole. Thus, the trial court is still required to consult § 53a-35a to determine the upper limits of a sentence for violations of § 53a-70.

In reliance on the tenet of statutory construction that, "[w]hen two legislative enactments are in conflict and cannot reasonably be reconciled, the later one repeals the earlier one to the extent of the repugnance"; *New Haven Water Co.* v. *North Branford*, 174 Conn. 556, 565, 392 A.2d 456 (1978); the defendant further argues that, because there is an irreconcilable conflict between §§ 53a-29 (f) and 53a-70 (b) (3), the latter must be deemed to have repealed the former to the extent of that conflict. As the defendant's argument acknowledges, however, this principle has applicability only if, after resort to established tools of statutory interpretation, there is no way to reasonably reconcile the two provisions. Because we are satisfied that there is a reasonable interpretation that gives effect to both statutes, we have no occasion to apply this tenet of statutory construction.

[13] We have explained that "[t]he provision that is now codified at § 54-128 (c) . . . was adopted in response to the testimony of Deborah Del Prete Sullivan, executive assistant public defender and legal counsel for the [O]ffice of the [C]hief [P]ublic [D]efender. Sullivan submitted a letter to the [J]udiciary [C]ommittee stating that the bill as originally drafted . . . would allow the total number of years of imprisonment and the term of special parole (for which a person can be incarcerated) combined to exceed the maximum sentence [that] can be imposed for the offense. As a result, a person could be incarcerated for [a] . . . period of time well in excess of the maximum sentence permitted by the penal statute if [he was] to violate special parole. The concept of parole is that it is an extension of the original period of incarceration imposed as a sentence by the court. The language proposed would not pass constitutional muster, as a person could receive increased penalties without due process. These additional penalties could also violate the constitutional right against double jeopardy." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 540–41, 902 A.2d 1058 (2006). To remedy these infirmities, Sullivan proposed that the following language be added to § 54-128 (c): "The total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1998 Sess., p. 1325. As we noted in *State* v. *Tabone*, supra, 279 Conn. 527, the legislature's wholesale adoption of Sullivan's proposed language makes clear "that the legislature intended to resolve the alleged constitutional infirmities [in] the original bill by adding the language recommended by Sullivan . . . ." Id., 541.

[14] General Statutes (Rev. to 1999) § 54-125e (c) provides in relevant part: "The period of special parole shall be not less than one year nor more than ten years except that such period shall be not less than ten years nor more than thirty-five years for a person convicted of a violation of . . . section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b . . . ."

[15] General Statutes (Rev. to 1999) § 54-125e (c), as amended by Public Acts, Spec. Sess., June, 1999, No. 99-2, § 52, provides: "The period of special parole shall be not less than one year nor more than ten years except that such period may be for more than ten years for a person convicted of a violation of . . . section 53a-70, *as amended by this act*, 53a-70a, *as amended by this act*, 53a-70b, 53a-71, 53a-72a or 53a-72b, *as amended by this act* . . . ." (Emphasis added.)

[16] General Statutes (Rev. to 1999) § 53a-70 (b) provides: "Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court or, if the victim of the offense is under ten years of age, for which ten years of the sentence imposed may not be suspended or reduced by the court."

[17] General Statutes (Rev. to 1999) § 53a-70 (b), as amended by Spec. Sess. P.A. 99-2, § 49, provides in relevant part: "Sexual assault in the first degree is a class B felony for which two years of the sentence imposed may not be suspended or reduced by the court or, if the victim of the offense is

under ten years of age, for which ten years of the sentence imposed may not be suspended or reduced by the court, *and any person found guilty under this section shall be sentenced to a term of imprisonment and a period of special parole pursuant to subsection (b) of section 53a-28 which together constitute a sentence of at least ten years*." (Emphasis added.) In 2002, the legislature enacted Public Acts 2002, No. 02-138, § 5, which amended General Statutes (Rev. to 2001) § 53a-70 (b) to make certain violations of that statute class A felonies with longer, nonsuspendable sentences and transferred the foregoing italicized language to its own subdivision within § 53a-70 (b).

[18] General Statutes (Rev. to 1999) § 53a-70a (b), as amended by Spec. Sess. P.A. 99-2, § 50, provides in relevant part: "Aggravated sexual assault in the first degree is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court *and a period of special parole pursuant to subsection (b) of section 53a-28 which together constitute a sentence of twenty years*." (Emphasis added.)

[19] General Statutes (Rev. to 1999) § 53a-72b (b), as amended by Spec. Sess. P.A. 99-2, § 51, provides in relevant part: "Sexual assault in the third degree with a firearm is a class C felony for which two years of the sentence imposed may not be suspended or reduced by the court *and any person found guilty under this section shall be sentenced to a term of imprisonment and a period of special parole pursuant to subsection (b) of section 53a-28 which together constitute a sentence of ten years*." (Emphasis added.)

[20] This is so because the maximum authorized sentence for a class B felony violation of § 53a-70 is twenty years; see General Statutes § 53a-35a (6); with a minimum, nonsuspendable sentence of two years. General Statutes § 53a-70 (b) (1). Because the length of a combined sentence of imprisonment and special parole cannot exceed the maximum authorized sentence for the offense; General Statutes § 54-128 (c); the longest period of special parole that could be imposed on a person who commits a class B felony violation of § 53a-70 would be eighteen years. In contrast, § 53a-29 (f) authorizes up to thirty-five years of probation for that offense.

[21] As we previously have explained, "[p]ursuant to § 54-128 (c), when a defendant violates special parole, he is subject to incarceration only for 'a period equal to the unexpired portion of the period of special parole.' Thus, for a violation that occurs on the final day of the defendant's special parole term, the defendant would be exposed to one day of incarceration. Special parole, therefore, exposes a defendant to a decreasing period of incarceration as the term of special parole is served. On the other hand, when a defendant violates his probation, the court may revoke his probation, and, if revoked, 'the court shall require the defendant to serve the sentence imposed or impose any lesser sentence.' . . . Accordingly, if [a] defendant . . . violate[s] his probation on the final day of [the probationary] term, he would be exposed to the full suspended sentence of . . . incarceration [whatever that sentence may be]. Thus, in contrast to a term of special parole, the defendant is exposed to incarceration for the full length of the suspended sentence, with no decrease in exposure as the probationary period is served, for the entirety of the probationary period." (Citation omitted; footnote omitted.) *State* v. *Tabone*, supra, 292 Conn. 429.

[22] We note that the defendant argues that the rule of lenity compels us to strictly construe § 53a-70 (b) (3) against the state. It is well established that "courts do not apply the rule of lenity unless a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Lutters*, 270 Conn. 198, 219, 853 A.2d 434 (2004). There is no role for the rule of lenity in the present case because, after applying the traditional tools of statutory interpretation in seeking to construe § 53a-70 (b) (3), we are not left with a reasonable doubt as to the meaning of that provision.